IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3132-D

| | | |
|---|---|---|
| MICHAEL EUGENE HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GLADYS CASSESE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On July 22, 2010, Michael Eugene Hunt ("Hunt" or "plaintiff"), a state inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 [D.E. 1], along with a declaration [D.E. 3]. Hunt seeks leave to proceed in forma pauperis [D.E. 2]. On February 1, 2011, the court reviewed the action pursuant to 28 U.S.C. § 1915A, allowed plaintiff's claim for exposure to tobacco smoke to proceed, and denied plaintiff's motion for appointment of counsel [D.E. 8]. The clerk directed North Carolina Prisoner Legal Services ("NCPLS") to investigate plaintiff's claim [D.E. 9]. On February 9, 2011, Hunt declined the assistance of NCPLS [D.E. 10]. On April 11, 2011, defendants Cassese, Hunt, Locklear, Smith, Taylor, and Thomas answered the complaint [D.E. 19]. On May 25, 2011, these defendants filed a motion for judgment on the pleadings [D.E. 20]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Hunt about the motion for judgment on the pleadings, the consequences of failing to respond, and the response deadline [D.E. 22]. On June 6, 2011, Hunt moved to amend the complaint [D.E. 23].[1] On July 15,

---

[1] Hunt's motion to amend seeks only to correct the spellings of some defendants' names, see Mot. Amend 1–2, and does not alter the court's conclusion with respect to judgment on the pleadings.

2011, Hunt responded in opposition to the motion for judgment on the pleadings [D.E. 26] and renewed his motion for appointment of counsel [D.E. 27]. On October 5, 2011, the remaining defendants (Oxendine and Sutton) answered the complaint [D.E. 37] and joined the other defendants' motion for judgment on the pleadings [D.E. 38]. That same day, Hunt moved for entry of default judgment [D.E. 41]. Pursuant to Roseboro, 528 F.2d at 310, the court notified Hunt about the motion for judgment on the pleadings, the consequences of failing to respond, and the response deadline [D.E. 40]. On October 24, 2011, Hunt responded in opposition to the motion for judgment on the pleadings [D.E. 43]. As explained below, the court grants the motions for judgment on the pleadings and denies plaintiff's motions.

I.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute; therefore, the court can decide the case on its merits by considering the pleadings along with any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c), 12(c). Moreover, a court may consider "documents incorporated into the [pleadings] by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

The same standard of review applied to a motion to dismiss under Rule 12(b)(6) also applies to a motion for judgment on the pleadings under Rule 12(c). See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). In analyzing a motion for a judgment

2

on the pleadings, a court must determine whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–52 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), cert. granted, 131 S. Ct. 3059 (2011); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In evaluating a motion for judgment on the pleadings, the court accepts the complaint's factual allegations as true, but need not accept a complaint's legal conclusions drawn from the facts. Iqbal, 129 S. Ct. at 1949–50; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted).

Hunt is incarcerated at Polk Correctional Institution. Hunt alleges that on September 11, 2008, he was transferred to Lumberton Correctional Institution ("LCI") and assigned to a dormitory ("C-Dorm") that housed 128 inmates, approximately 120 of whom smoked during the day when the recreation yard was open. Compl. 5. Hunt further alleges that many inmates from the other dormitories smoked and were "allowed to come in and out . . . ." Id. After lock down at night, C-Dorm "stayed full of smoke and caused [Hunt] to stay awake at night, coughing, headaches . . . from sinus problems, runny nose all the time and eye's [sic] burning." Id. Correctional officers were aware of smoking in C-Dorm in violation of Department of Corrections no-smoking policies because they "would go around late at night and pick up empty drink cans and cups with cigarette butts in them, and throw them away . . . ." Id.

Shortly after his arrival at LCI, Hunt informed his case manager, defendant Cassese, "about the problem he was having from secondhand smoke and . . . told her [that] medical staff at Marion Correctional Institution had recommended for [Hunt] to be housed at one of the prison units that was

3

smoke free," and requested a transfer. Id. 6. Cassese "said that it was a unit policy that no inmate could be recommended for a transfer until he had been there six months . . . ." Id. Defendants Taylor, Hunt, and Thomas, who were all high-level LCI officials, enforced the six-month transfer policy, thereby preventing Plaintiff's transfer to a smoke-free prison. Id. 6–9. Defendants Hunt and Thomas also "allowed cigarettes to be sold to inmates without proper warning of the health hazard [posed to] the nonsmoking dorm-mates." Id. 7, 9.

As a result, Hunt "refuse[d] to sleep in C-Dorm, and demanded a single cell in segregation away from secondhand smoke . . . ." Id. 7. Hunt was accommodated in a single cell from October 17 through December 17, 2008, when a LCI captain informed him that Hunt and Taylor "said, if you don't return back to C-Dorm, you will receive [a] disciplinary charge and [be] recommended for solitary confinement, which takes away all your privilege[s]." Id. On the same date, defendant Locklear, an "official in charge," ordered Hunt to return to C-Dorm and charged him with a disciplinary infraction when he refused. Id. 8. Defendants Oxendine and Sutton investigated and approved the disciplinary charge. Id. Defendant Thomas also "allowed her staff to use disciplinary actions and threats of solitary confinement to force plaintiff to live in unsafe conditions and life-threat[en]ing conditions" and "allowed dorm windows to be bolted shut that cuts off the ventilation . . . ." Id. 9. Defendant Smith, the "head of all health care services for North Carolina prisoner[s], . . . failed to take any kind of action[], as to the unsafe and life threatening conditions [Hunt] was being forced to live in," even after Hunt sent her a copy of an October 15, 2008, grievance. Id. 4, 9.

Defendants argue that "[t]he Complaint fails to state a claim because it fails to show exposure to [second-hand smoke] sufficient to violate the Eighth Amendment." [D.E. 21] 3; see also [D.E. 39] 4. A prisoner's exposure to second-hand smoke ("ETS") may give rise to an Eighth Amendment

4

claim if he is exposed to unreasonable levels of ETS, and prison authorities are deliberately indifferent to the exposure. See, e.g., Helling v. McKinney, 509 U.S. 25, 35 (1993); Tudor v. Harrison, 195 F. App'x 160, 161 (4th Cir. 2006) (per curiam) (unpublished). Helling, however, does not require smoke-free prisons. See Scott v. Dist. of Columbia, 139 F.3d 940, 942 (D.C. Cir. 1998); Williams v. Howes, No. 1:05-CV-817, 2007 WL 1032365, at *14 (W.D. Mich. Mar. 30, 2007) (unpublished); Mansoori v. Lappin, No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007) (unpublished). Moreover, a prisoner's exposure to smoke must cause "more than mere discomfort or inconvenience." Talal v. White, 403 F.3d 423, 426 (6th Cir. 2005) (quotation omitted); see also Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 2000); cf. Ozier v. Berghuis, No. 1:08-cv-1203, 2009 WL 1559786, at *2–3 & n.1 (W.D. Mich. June 1, 2009) (unpublished) (noting that "[t]he cellmate in Helling smoked five packs of cigarettes a day").

As for the objective component of his Eighth Amendment claim, Hunt has failed to show a sufficiently serious level of exposure to ETS. See Griffin v. DeRosa, 153 F. App'x 851, 853 (3rd Cir. 2005) (per curiam) (unpublished); Ali-X v. Hayman, No. 10-4666 (JBS), 2010 WL 4669666, at *6 (D.N.J. Nov. 8, 2010) (unpublished); Ozier, 2009 WL 1559786, at *2. Additionally, although Hunt relies heavily on a "2005 or 2006 . . . surgeon general[] report on secondhand smoke," which states that "for some people, even a few minutes around drifting smoke is enough to spark an asthma attack, make blood more prone to clot, and damage heart arteries and begin cell damage that can lead to cancer," along with recent North Carolina legislation banning smoking in legislative buildings and prison facilities, [D.E. 43] 8–9, Hunt has failed to allege any current medical condition that would allow a reasonable factfinder to draw any connection between the hypothetical risks of ETS exposure and Hunt's exposure to ETS. See, e.g., Powers v. Snyder, 484 F.3d 929, 932 (7th Cir. 2007) ("[A] prisoner who complains that cigarette smoking amounts to punishment because it is endangering his

5

health must therefore show that his health is indeed endangered . . . ."); King v. Caruso, No. 2:07-cv-133, 2011 WL 4352720, at *2 (W.D. Mich. Sept. 16, 2011) (unpublished) (dismissing claim for future damages where prisoner submitted expert evidence that he "has an increased risk of developing a medical condition due to exposure of second-hand smoke, but that exact increase in risk for Plaintiff is uncertain . . . [because] this evidence amounts to mere conjecture and possibility, and not a predicted future disease that is medically reasonably certain to follow"). Thus, the court concludes that defendants are entitled to judgment on the pleadings.

As for Hunt's renewed motion for appointment of counsel, no right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Ct., 490 U.S. 296 (1989); see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163. The facts of this case and Hunt's abilities do not present exceptional circumstances. Moreover, Hunt declined to accept the assistance of NCPLS. Accordingly, the court denies Hunt's renewed motion to appoint counsel.

Finally, as for Hunt's motion for entry of default judgment, Hunt seeks default judgment against defendants Sutton and Oxendine "for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure." Mot. Default J. [D.E. 41] 1. Defendant Sutton was served on September 10, 2011, and his answer was due on October 1, 2011 [D.E. 34]. On September 28, 2011, defendant Sutton sought and obtained an extension of time to answer the complaint until ten days after service on defendant Oxendine was obtained [D.E. 35–36]. Defendant Oxendine was served on September 26, 2011 [D.E. 42]. Therefore, Sutton and Oxendine timely answered the complaint on October 5, 2011. Furthermore, public policy strongly prefers that courts decide cases on the merits. Accordingly, the court denies Hunt's motion for entry of default judgment. See, e.g.,

6

Colleton Prep. Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417–21 (4th Cir. 2010).

II.

As explained above, the court GRANTS defendants' motions for judgment on the pleadings [D.E. 20, 38], and DENIES plaintiff's motions [D.E. 23, 27, 41]. The Clerk of Court is DIRECTED to close the case.

SO ORDERED. This 7 day of December 2011.

JAMES C. DEVER III
Chief United States District Judge